# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 30, 2012

## STATE OF TENNESSEE v. JAMES LYON,[1] II

**Appeal from the Circuit Court for Franklin County**
**No. 20004       Hon. J. Curtis Smith, Judge**

---

**No. M2012-00357-COA-R3-JV** -Filed January 24, 2013

---

The appellant, a juvenile, appealed the juvenile court's revocation of his probation and commitment to the custody of the Department of Children's Services. The trial court, upon the juvenile's timely appeal, affirmed the ruling of the juvenile court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and HERSCHEL P. FRANKS, SP. J., joined.

B. Jeffery Harmon, District Public Defender, and Robert G. Morgan, Assistant Public Defender, Jasper, Tennessee, for the appellant, James Lyon, II.

Robert E. Cooper, Jr., Attorney General and Reporter, and Clarence E. Lutz, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

## OPINION

## I. BACKGROUND

In October 2011, James Lyon, II ("the Juvenile")[2] (D.O.B. 9/6/96), was ordered to be

---

[1]The record reveals that the proper spelling of the juvenile's last name is "Lyon," not "Lyons."

[2]Several months prior to the events at issue, the Juvenile's mother filed a juvenile court petition alleging that her son engaged in "unruly" behavior in that he "is out of control" and "he has repeatedly gotten into trouble at school. He screams at his mother and refuses to do as told." The record contains no order

(continued...)

committed to the custody of the Tennessee Department of Children's Services ("DCS") "with said commitment suspended," pending his compliance with placement in the Southeast Tennessee Human Resource Agency ("SETHRA") Juvenile Community Intervention Services Program ("JCIS"). Conditions of his placement included "maintain[ing] a 'C' average and obey[ing]all school rules." In addition, the Juvenile was required to report all subsequent offenses to his probation officer immediately. The order specifically provided that "[i]f any rules are violated, a petition will be filed against you and you will be subject to being placed in detention or jail or into the custody of the State of Tennessee."

The following month, the Juvenile was charged by petition with delinquency. Shelley Maguire, a teacher at Franklin County High School and the administrator of the in-school detention ("ISD") portion of the school's behavior modification program, related the details of the Juvenile's behavior. Maguire testified that on October 31, 2011, she asked the Juvenile, who was in detention at that time, to stop talking, as talking is not permitted in ISD. The Juvenile, however, did not comply with Maguire's entreaties. After several requests, Maguire asked the Juvenile to move his desk. The Juvenile remarked, "this is f---ing bulls--t." Maguire instructed the Juvenile to refrain from speaking in such a manner. He responded by slamming his desk to the floor and muttering under his breath. At this point, Maguire had the Juvenile removed from ISD.

Upon James Collins, the Juvenile's probation officer, learning of the incident, he sought revocation of the Juvenile's probationary placement. At the later hearing, Collins testified as follows regarding probation:

> A . . . Once they violate, and he is under a suspended committal, . . . any violation, truancy, one truancy can violate their probation, intensive probation, and place them in state custody.
>
> * * *
>
> . . . [H]e must obey all school rules, and he must follow all laws, including U.S., state, county, and city laws.

The juvenile court's order found beyond a reasonable doubt that the Juvenile was "delinquent," guilty of disorderly conduct, and in violation of the JCIS probation. It noted

---

[2](...continued)
disposing of that petition. The testimony before the trial court revealed past disorderly conduct and assault charges.

"a lengthy history of disruptive behavior and disrespect of authority figures." The trial court, upon its de novo review, found that the Juvenile had engaged in delinquent, disorderly conduct by making unreasonable noise and engaging in physically offensive behavior and that the probation was properly revoked. This appeal ensued.

## II. ISSUE

We restate the issue raised by the Juvenile as whether the court erred when it determined that the disruptive classroom behavior constituted conduct sufficient to require the revocation of his probation.

## III. STANDARD OF REVIEW

This non-jury matter is reviewed de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). However, "if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness." *Forrest Constr. Co., L.L.C. v. Laughlin*, 337 S.W.3d 211, 220 (Tenn. Ct. App. 2009) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)). Questions of law are reviewed de novo, with no presumption of correctness. Tenn. R. App. P. 13(d).

A delinquent act is one that is designated as a crime under the law. Tenn. Code Ann. § 37-1-102(b)(9). Such an act must be proven beyond a reasonable doubt. Tenn. R. Juv. P. 28(d)(1); *State v. Rodgers*, 235 S.W.3d 92, 95 (Tenn. 2007). A probation violation is to be supported by a preponderance of the evidence. Tenn. R. Juv. P. 35(b).

The review of the trial court's finding of delinquency is accorded the same dignity as a jury verdict in a criminal trial. *State v. Farrar*, 355 S.W.3d 582, 585 (Tenn. Ct. App. 2011) (quoting *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999)). Accordingly, we do not reweigh or reevaluate the evidence. *State v. Pfeifer*, 993 S.W.2d 47, 51 (Tenn. Crim. App. 1998). When the sufficiency of the evidence is challenged, our standard of review is "whether, after reviewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 324, 99 S.Ct. 2781 (1979); *State v. Rogers*, 188 S.W.3d 593, 616 (Tenn. 2006); *see also* Tenn. R. App. P. 13(e).

-3-

An abuse of discretion standard is applied when we review a revocation of probation. *Farrar*, 355 S.W.3d at 585-86. In order to show that a trial judge abused his or her discretion by revoking probation, a defendant must show that the record contains no substantial evidence to support the trial judge's conclusion that a probation violation occurred and that because of the violation, probation should be revoked. *See State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991).

## IV. DISCUSSION

In this case, it is alleged that the Juvenile engaged in disorderly conduct, addressed in Tennessee Code Annotated section 39-17-305:

(a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:

(1) Engages in fighting or in violent or threatening behavior;

(2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or

(3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

(c) A violation of this section is a Class C misdemeanor.

Tenn. Code Ann. § 39-17-305.

The Juvenile argues that his conduct at school did not meet the required criteria denoted in section 39-17-305. He further asserts that the trial court's findings are based on an erroneous assessment of the proof and, therefore, constitute an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). Additionally, he submits that the record lacks substantial evidence to support the trial court's conclusion that a violation of the conditions of probation occurred. *Harkins*, 811 S.W. 2d at 82.

The trial court determined as follows:

THE COURT: . . . I do find that it was physically offensive, and he was making unreasonable noise. You know, he's not six years old. He's old enough to know that you don't curse at a teacher, and you don't slam your desk around when you're simply asked to quit talking, so I find that the grounds are made out for a probation revocation.

The testimony from Maguire establishes the proof of disorderly conduct. The Juvenile was in a classroom with other students making unreasonable noise that prevented the other students and Maguire from carrying on the lawful activities of teaching and learning. The observations of the trial court on the record, when viewed in the light most favorable to the State, establish a violation of subsection (b) of section 39-17-305 beyond a reasonable doubt. The evidence presented to the trial court would lead any rational trier of fact to the reasonable conclusion that the Juvenile engaged in disorderly conduct.

Likewise, the trial court properly affirmed the juvenile court's revocation of probation and placement of the Juvenile in DCS custody. The Juvenile agreed to obey school rules as a term of continued home placement. As noted by the State, the fact that he was in detention in the first place suggests that the Juvenile failed to comply with school rules. The testimony from Maguire demonstrates the Juvenile's disregard not only of the school rules, but also his contempt for the juvenile court's prior instructions concerning his probation. The record as a whole supports the conclusion that revocation of the probationary sentence was warranted because prior less restrictive means had been ineffective to correct the Juvenile's behavior. No abuse of discretion has been shown.

Accordingly, we find that the evidence of disorderly conduct is legally sufficient to support the finding of delinquency and that the Juvenile cannot show a preponderance of evidence contrary to the trial court's determination that, by engaging in such conduct, the Juvenile violated the terms of his probation.

## V. CONCLUSION

The decision of the trial court is affirmed. The case is remanded for all further proceedings as may be necessary. As Mr. Lyon is a juvenile, costs of the appeal are assessed against the State of Tennessee.

_____
JOHN W. McCLARTY, JUDGE

-5-